# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **DEMARKUS HALL and** ) | |
| **EDDIE HUGHES,** ) | |
| ) | **CIVIL ACTION NO.:** |
| ) | |
| **PLAINTIFFS,** ) | |
| ) | |
| ) | **JURY DEMAND** |
| **vs.** ) | |
| ) | |
| ) | |
| **COAL BED SERVICES, INC. and** ) | |
| **PATE HOLDINGS INC.** ) | |
| ) | |
| **DEFENDANTS.** ) | |

## COMPLAINT

**I.   INTRODUCTION**

1.   This is an action alleging violations of Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. §2000e et seq., and 42 U.S.C. §1981, brought by DeMarkus Hall and Eddie Hughes. Plaintiffs allege that they were employed by Defendant Coal Bed Services and Defendant Pate Holdings. Plaintiffs are African-American and assert that Defendants discriminated against them based on their race, and retaliated against them. Defendants' unlawful treatment of Plaintiffs included terminating Plaintiffs' employment and failing to

give Plaintiffs' re-hire or reinstatement opportunities similar to those given to white employees and individuals who did not complain of discrimination. Plaintiffs seek injunctive relief, equitable relief, reinstatement, lost wages and benefits, compensatory damages, punitive damages, and reasonable attorney fees and costs.

## II.   JURISDICTION

2.   The jurisdiction of this Court is invoked pursuant to the Act of Congress known as 28 U.S.C. §§1331, 1334(4), 2201 and 2202, 42 U.S.C. §2000e *et seq*. This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, by the "Civil Rights Act of 1991", 42 U.S.C. §2000e *et seq*., and 42 U.S.C. §1981. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 U.S.C. §2000 *et seq*. providing for injunctive and other relief against race discrimination in employment.

3.   The Plaintiffs timely filed their charges of race discrimination with the Equal Employment Opportunity Commission (EEOC). The Plaintiffs further filed this race discrimination suit within 90 days after receipt of their right-to-sue letters issued from the EEOC. There are no administrative prerequisites to the maintenance of a claim for race discrimination or retaliation pursuant to 42 U.S.C. 1981.

## III.   PARTIES

4. Plaintiff DeMarkus Hall is an African-American citizen of the United States and a resident of the State of Alabama. At all times relevant to this lawsuit, Plaintiff Hall was employed by the Defendants.

5. Plaintiff Eddie Hughes is an African-American citizen of the United States and a resident of the State of Alabama. At all times relevant to this lawsuit, Plaintiff Hughes was employed by the Defendants.

6. Defendant Coal Bed Services (hereinafter "CBS" or "Defendant"), is an employer doing business in this district, and at all times relevant to this action, the Defendant was an employer of Plaintiffs Hall and Hughes within the meaning of Title VII of the Civil Rights Act of 1964," as amended, by the "Civil Rights Act of 1991", 42 U.S.C. §2000e *et seq*., and 42 U.S.C. §1981.

7. Defendant Pate Holdings (hereinafter "PH" or "Defendant"), is an employer doing business in this district, and at all times relevant to this action, the Defendant was an employer of Plaintiffs Hall and Hughes within the meaning of Title VII of the Civil Rights Act of 1964," as amended, by the "Civil Rights Act of 1991", 42 U.S.C. §2000e *et seq*., and 42 U.S.C. §1981.

### IV. FACTS

8. Plaintiffs re-allege and incorporate by reference paragraphs 1-7 with the same force and effect as if fully set out in specific detail hereinbelow.

9. DeMarkus Hall and Eddie Hughes filled out Pate Employment Application forms in 2020.

10. Defendants completed Pate New Hire Salary Forms for both Hall and Hughes, listing Coal Bed Services as the entity, effective September 21, 2020.

11. Defendants were Plaintiffs' joint employers and/or an integrated enterprise with each other and other related employers.

12. Hall and Hughes started their jobs with Defendants on the same day. In those jobs, Hall and Hughes helped tear down buildings and clear out trash.

13. Hall and Hughes performed their jobs well.

14. During the time Hall and Hughes worked for Defendants, all of the supervisory positions were held by white males.

15. Willie Williams (white) was Hall and Hughes' primary supervisor.

16. Stan Pate (white) was Williams' boss and is the owner of CBS and PH.

17. Throughout their time working for Defendants, Hall and Hughes experienced situations where they believed they were being treated differently based on their race.

18. For example, CBS would send teams of workers to different locations to complete various jobs. Hall and Hughes were always sent out on a team together. Hall and Hughes assert that their white supervisors would assign the less desirable,

harder, and dirtier work to Plaintiffs while the supervisors would let Plaintiffs' white co-workers do other jobs.

19. Williams would often ask James Toxey (white) to act as a supervisor out on a worksite. When Toxey told workers to complete certain tasks, he would call the white workers by their names (like 'Jonathan'), but when he would tell Hall or Hughes to complete tasks, he would just say 'yall'. Hall and Hughes believed this different treatment was noticeable and purposefully disrespectful. Other white workers sometimes followed the example of Toxey in this practice.

20. On or about February 1, 2021, Hall and Hughes verbally confronted Toxey, the white employee who frequently and pointedly refused to use Plaintiffs' names.

21. Hall and Hughes asked Toxey why he never called them by their given names and he just laughed. Hall and Hughes said they thought he was racist and he got upset.

22. Willie Williams came over and pulled Hall and Hughes away.

23. At that time, Hughes told Williams that Toxey was racist and that Toxey needed to talk to Hall and Hughes like he talked to all the other white guys.

24. In response to this complaint about discriminatory treatment, Williams told Hughes to stop talking.

25. Defendants did not take any actions to investigate or address Plaintiffs'

complaint about discriminatory treatment based on race.

26. Multiple times throughout their employment with Defendants, Plaintiffs expressed interest in moving up in the company to better jobs, including the job of operator.

27. Several times one white co-worker tried to give Hall and Hughes training on how to do the job of 'operator', which would have allowed them to advance, but every time he tried to do that, Williams or Toxey would have some reason why Plaintiffs could not get training right then.

28. Hall and Hughes believe that Williams and Toxey were deliberately trying to keep Hall and Hughes from getting the training they needed to move to a better paying position in the company, based on their race.

29. Approximately a week or two after Plaintiffs' complained about racist treatment, Hall and Hughes were assigned to a crew that was clearing out the old McFarland Mall in Tuscaloosa. There were about eight men working at the Mall site that day. Hall and Hughes were the only African-Americans working on that crew.

30. When that work was complete, the supervisor told all workers to go to a different work site. When the crew got to the second site, Williams passed out cups and said all workers had to take drug tests.

31. Williams said that if anyone thought he would not be able to pass the

drug test, then he didn't need to take it.

32. One of Hall and Hughes' white co-workers knew he would fail the drug test, so he gave Williams the cup back, turned in his time sheet, and walked out.

33. Hall and Hughes were concerned that they might also fail the drug test, so they followed their white co-worker. Hall and Hughes thanked Williams for the opportunity to work.

34. A few days later, Hall and Hughes heard that the white co-worker who had walked out and not taken the drug test was allowed to go back to work the very next day. He was required to agree to pass some random drug tests in the future, but was also immediately allowed to return to work.

35. Hall tried calling and texting Williams to see if he and Hughes could come back to work under the same conditions as their white co-worker. Even though both Hall and Hughes did not want to be discriminated against or treated differently based on their race, they also both needed a job.

36. Williams did not call Hall back, but did text to say that he could not let Hall or Hughes come back to work.

37. Hall called Stan Pate and told Pate that he and Hughes also wanted to come back to work. Hall said he knew about the deal that the white co-worker got and he and Hughes would be willing to do the same if they could go back to work.

38. Pate said that the white co-worker was brought back because he had a

family to provide for.

39. Hall reminded Pate that he also had a family to provide for and he and Hughes just wanted to be treated equally. Pate said he would call Hall back, he did not do so.

40. In terminating Plaintiffs and refusing to allow Plaintiffs to return to their jobs in a manner similar to their white co-worker, Defendants intentionally, willfully, and maliciously discriminated against Plaintiffs, based on their race.

41. Plaintiffs were treated differently on account of their race in regards to training opportunities, job assignments, communications, and re-hire opportunities.

42. Plaintiffs further assert that Defendants' adverse actions were in retaliation for complaining about discriminatory treatment, based on race.

43. As a result of Defendants' actions and inactions described above, Plaintiffs have suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation, and other benefits and conditions of employment. Additionally, Plaintiffs have suffered injury including pain, humiliation, emotional distress, mental anguish and suffering, and loss of enjoyment of life.

## V. CAUSES OF ACTION

### A. RACE DISCRIMINATION - DISPARATE TREATMENT IN VIOLATION OF TITLE VII -AGAINST COAL BED SERVICES

44. Plaintiffs re-allege and incorporate by reference paragraphs 1-43 with the same force and effect as if fully set out in specific detail hereinbelow.

45. Plaintiffs were subjected to disparate treatment by Defendant Coal Bed Services based on their race.

46. Plaintiffs were consistently given the more difficult, dirtier jobs on work sites, as compared to their white-co-workers.

47. Plaintiffs' white co-workers communicated with Plaintiffs in a deliberately condescending and different manner than they communicated with their white co-workers.

48. Plaintiffs were interested in promotions and expressed interest in receiving on-the-job training for better positions, but Defendant denied Plaintiffs training opportunities.

49. Defendant terminated Plaintiffs on the basis of their race and refused to allow them to return to work under conditions similar to those provided to their white co-worker.

50. Defendant had no legitimate, non-discriminatory reason for their conduct related to the disparate treatment or the termination.

51. Defendant's reasons for its actions and inactions are pretext for race discrimination.

52. Because of Defendant's conduct, Plaintiffs have suffered loss of income and employment benefits as well as severe emotional distress, embarrassment, and humiliation.

53. Defendant's actions were willful, with malice and with reckless disregard for Plaintiffs' rights.

**B.   RETALIATION- IN VIOLATION OF TITLE VII -AGAINST COAL BED SERVICES**

54. Plaintiffs re-allege and incorporate by reference paragraphs 1-53, above with the same force and effect as if fully set out in specific detail hereinbelow.

55. Plaintiffs complained to their supervisor about race discrimination.

56. Plaintiffs had a good faith belief that the conduct was discriminatory.

57. As a result of Plaintiffs' complaints, Plaintiffs were terminated and Defendant refused to allow them to return to work under conditions similar to those provided to their white co-worker.

58. Plaintiffs engaged in protected activity.

59. Plaintiffs were subjected to adverse actions.

60. Defendant's actions are casually related to Plaintiffs' protected activity. A casual connection exists between the protected activity and Defendant's adverse actions.

61. Defendant's conduct was pretext for retaliation.

62. Plaintiffs were treated differently than similarly situated individuals who did not complain of discrimination.

63. Because of Defendant's conduct, Plaintiffs have suffered loss of income and employment benefits as well as severe emotional distress, embarrassment, and humiliation.

64. Defendant engaged in the practices complained of herein with malice and/or reckless indifference to Plaintiffs' federally protected rights.

65. Plaintiffs seek to redress the wrongs alleged herein and this suit is their only means of securing adequate relief.  Plaintiffs are now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

C. **RACE DISCRIMINATION - DISPARATE TREATMENT IN VIOLATION OF 42 U.S.C. 1981-AGAINST COAL BED SERVICES AND PATE HOLDINGS**

66. Plaintiffs re-allege and incorporate by reference paragraphs 1-43 with the same force and effect as if fully set out in specific detail hereinbelow.

67. Plaintiffs were subjected to disparate treatment by Defendants based on their race.  But for their race, Plaintiffs would not have suffered this disparate treatment.

68. Plaintiffs were consistently given the more difficult, dirtier jobs on work sites, as compared to their white-co-workers.

69. Plaintiffs' white co-workers communicated with Plaintiffs in a deliberately condescending and different manner than they communicated with their white co-workers.

70. Plaintiffs were interested in promotions and expressed interest in receiving on-the-job training for better positions, but Defendants denied Plaintiffs training opportunities.

71. Defendants terminated Plaintiffs on the basis of their race and refused to allow them to return to work under conditions similar to those provided to their white co-worker.

72. Defendants had no legitimate, non-discriminatory reason for their conduct related to the disparate treatment or the termination.

73. Defendants' reasons for their actions and inactions are pretext for race discrimination.

74. Because of Defendants' conduct, Plaintiffs have suffered loss of income and employment benefits as well as severe emotional distress, embarrassment, and humiliation.

75. Defendants' actions were willful, with malice and with reckless disregard for Plaintiffs' rights.

### D. **RETALIATION-IN VIOLATION OF 42 U.S.C. 1981 -AGAINST COAL BED SERVICES AND PATE HOLDINGS**

76. Plaintiffs re-allege and incorporate by reference paragraphs 1-43, 67-75 above with the same force and effect as if fully set out in specific detail hereinbelow.

77. Plaintiffs complained to their supervisor about race discrimination.

78. Plaintiffs had a good faith belief that the conduct was discriminatory.

79. As a result of Plaintiffs' complaints, Plaintiffs were terminated and Defendants refused to allow them to return to work under conditions similar to those provided to their white co-worker.

80. Plaintiffs engaged in protected activity.

81. Plaintiffs were subjected to adverse actions.

82. Defendants' actions are casually related to Plaintiffs' protected activity. A casual connection exists between the protected activity and Defendants' adverse actions.

83. Defendants' conduct was pretext for retaliation.

84. Plaintiffs were treated differently than similarly situated individuals who did not complain of discrimination.

85. Because of Defendants' conduct, Plaintiffs have suffered loss of income and employment benefits as well as severe emotional distress, embarrassment, and humiliation.

86. Defendants engaged in the practices complained of herein with malice and/or reckless indifference to Plaintiffs' federally protected rights.

87. Plaintiffs seek to redress the wrongs alleged herein and this suit is their only means of securing adequate relief. Plaintiffs are now suffering and will continue to suffer irreparable injury from the Defendants' unlawful policies and practices as set forth herein unless enjoined by this Court.

## VI.    **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully pray that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendants are violative of the rights of the Plaintiffs as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, by the "Civil Rights Act of 1991," 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. §1981.

2. Grant Plaintiffs a permanent injunction enjoining the Defendants, their agents, successors, employees, attorneys and those acting in concert with the Defendants and at the Defendants' request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991," 42 U.S.C. §2000e *et seq.,* and 42 U.S.C. §1981.

3. Enter an order requiring the Defendants to make the Plaintiffs whole by awarding back-pay (plus interest), front-pay, punitive damages, compensatory damages, nominal damages, declaratory relief, injunctive relief, and benefits.

4. The Plaintiffs further pray for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorney's fees, and expenses.

Respectfully submitted,

*/s/ Rachel L. McGinley*
Rachel L. McGinley
Alabama State Bar Number: 1892-A64M
WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500


**PLAINTIFFS HEREBY DEMAND A TRIAL BY STRUCK JURY.**

Plaintiffs request this Honorable Court to serve via certified mail upon the Defendants the following: Summons, Complaint.

**DEFENDANTS' ADDRESSES:**

Coal Bed Services, Inc.
Luther S. Pate, IV (Registered Agent)
Box 100, Quail Ridge
Northport, AL 35476

Pate Holdings Inc.
Luther S. Pate, IV (Registered Agent)
819 Mimosa Park Rd.
Tuscaloosa, AL 35405

*/s/ Rachel L. McGinley*
OF COUNSEL

16