IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| **DEMARKUS HALL and EDDIE HUGHES,** | ) | |
| **Plaintiffs,** | ) ) ) | |
| v. | ) ) | 7:22-cv-00513-LSC |
| **COAL BED SERVICES, INC. and PATE HOLDINGS, INC.,** | ) ) ) ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF OPINION**

Demarkus Hall and Eddie Hughes ("Plaintiffs") bring this action against Coal Bed Services, Inc. and Pate Holdings, Inc. ("Defendants"), asserting claims of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Before the Court is Defendants' Motion for Summary Judgment. (Doc. 29.) For the reasons stated below, Defendants' motion is due to be **GRANTED**.

**I. Background**[1]

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057,

Plaintiffs are both African American males that were employed by Defendants as laborers from approximately September 21, 2020, to February 19, 2021. (Docs. 1 ¶¶ 4-5; 29-1 ¶¶ 3-4, 24.) Plaintiffs job duties included shoveling mud out of holes, cleaning up buildings, tearing down buildings, leveling ground, and other manual labor as needed. (Docs. 29-1 ¶ 8; 29-3 at 37:2-7.)  Plaintiffs were normally supervised by Willie Williams ("Williams") (Doc. 1 ¶ 15), but on occasion, other employees would supervise, including James Toxey ("Toxey"). (Doc. 29-1 ¶ 7.) There were approximately six workers, and sometimes they were divided into smaller groups of two or three. (Doc. 29-3 at 37:8-38:2.)

Brandon Ramsey ("Ramsey"), who was white, was another employee of the Defendants. (Doc. 29-1 ¶ 10.) He was an operator prior to Plaintiffs starting work with the Defendants. (Doc. 29-1 ¶ 11.) He had experience in the construction business and his duties for the Defendants included operating various types of machinery. (Doc. 29-11 at 14:18-22; 41:4-8.) Ramsey made more money than the Plaintiffs. (Doc. 29-1 ¶ 13.)

Plaintiffs wanted to learn how to operate machinery. (Doc. 29-1 ¶¶ 14-15.) The Plaintiffs claim that they were told they would learn to operate as time went

---

1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record….").

on (doc. 29-3 at 41:11-12), but Hall was only given one opportunity and Hughes was given none (doc. 29-6 at 58:10-11). On the one occasion when Hall was given the opportunity to learn how to operate a tractor, he ran it into a company truck. (Doc. 29-3 at 43:13-23.) The Plaintiffs believe it was unfair because their white co-workers were taught to operate machinery and they were not. (Doc. 29-3 at 41:13-42:6.)

While employed by the Defendants, Plaintiffs believe they received other discriminatory treatment, particularly from Toxey. (Doc. 29-1 ¶ 18.) Plaintiffs contend that Toxey would not call them by their name, but rather referred to them as "y'all" and "boy," but he always called their white co-workers by their name. (Docs. 29-3 at 44:21-46:10; 29-6 at 35:17-36:4.) They also state they were given worse jobs than their co-workers, who all were white. (Docs. 29-6 at 35:8-16; 29-3 at 51:21-52-9.) Toxey also had them wash his truck during work hours. (Docs. 29-6 at 36:18-37:4; 29-1 ¶ 21.) Shortly after experiencing this, the Plaintiffs told Williams about Toxey's behavior towards them. (Docs. 29-6 at 10-13; 29-9 at 32:17-33:4.) Williams sought to separate the Plaintiffs from Toxey on the job site. (Doc. 29-3 at 53:7-11.) He assumed it was a "conflict of the personalities." (Doc. 29-9 at 66:21-22.)

Williams stated that on February 19, 2021, he received a report from another laborer on the job site that he witnessed the Plaintiffs smoking marijuana on the job site. (Docs. 29-9 at 35:7-18; 29-1 ¶ 24.) Unlike a previous incident of someone reporting potential marijuana use on the job site, this one was not formally reported or documented in writing.[2] (Doc. 29-9 at 55:4-14.) That same day, Williams ordered everyone at the job site to submit to a drug test. (Doc. 29-9 at 38:4-5.) Williams indicated if they refused to test, or they failed the test, then they would be terminated. (Doc. 29-9 at 38:19-22.) The Plaintiffs and Ramsey all refused to test, and therefore were terminated. (Docs. 29-9 at 7-11; 29-1 ¶¶ 26-27.)

The next day, Ramsey spoke with one of the owners and was ultimately allowed to come back to work. (Doc. 32 ¶ 31.) He was informed he would have to agree to be subjected to drug screens. (Docs. 29-11 at 38:17-19; 29-9 at 43:10-13.) Ramsey stated that upon his return, he was not given a drug test within his first few months back. (Doc. 29-11 at 37:19-38:8.) Both Plaintiffs contend they spoke with different supervisors and owners seeking to get their jobs back, but were not rehired, even when they agreed to be subject to the same drug screens as Ramsey.

---

[2] In this previous incident, Williams asked the reporter of the incident to write an email describing what he had seen on the job site. He testified he thought that was a good idea to do, but then stated he did not do this for the report of the Plaintiffs smoking marijuana on the job.

(Docs. 29-1 ¶¶ 33-34.) However, one of the owners, Stan Pate ("Pate") stated that Plaintiff Hall was offered his job back but refused to quit smoking marijuana for it, which was a condition of being rehired. (Doc. 29-13 at 68:16-69:13.)

## II.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal*

*Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Likewise, conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (*per curiam*) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### III. Discussion

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). Because the Plaintiffs have no direct evidence of discrimination,[3] they may prove their claims circumstantially under the *McDonnell Douglas* burden-shifting framework. *See id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *see also Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981). Because the Plaintiffs' Title VII and § 1981 claims are "subject to the same standards of proof and employ the same analytical framework," they will be addressed simultaneously. *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

### A. Defendants are entitled to summary judgment on their race discrimination claim because there is no genuine dispute of material fact.

Under the *McDonnell Douglas* framework for race discrimination allegations, the Plaintiffs must first establish a prima facie case of discrimination by showing that "(1) [they were] a qualified member of a protected class and (2) [were] subjected to an adverse employment action (3) in contrast to similarly situated employees outside the protected class." *Alvarez*, 610 F.3d at 1264 (enumerations

---

[3] "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir. 1989).

added). The prima facie case creates a rebuttable presumption that the employer has acted illegally. *Id.* Defendants can rebut that presumption by "articulating one or more legitimate non-discriminatory reasons for [their] action." *Id.* Doing so shifts the burden back to the Plaintiffs to "produce evidence that [Defendants'] proffered reasons are a pretext for discrimination." *Id.*

Plaintiffs argue that they suffered unlawful racial discrimination when they, two African American males, were terminated and not allowed to return to work, and their white co-worker who was terminated for the same reason was allowed back. (Doc. 1 ¶ 49.) There is no dispute that both Plaintiffs are qualified members of a protected class under Title VII. (Doc. 1 ¶¶ 4-5.) Additionally, there is no dispute that the plaintiffs were subject to an adverse employment action because both were terminated and not allowed back.[4] Nevertheless, Plaintiffs' claims fail under *McDonnell Douglas* because their proffered comparator is not a "similarly situated employee."

### i. Plaintiffs' Proffered Comparator

---

[4] Although there are some references in the deposition questions that Plaintiffs and Ramsey quit rather than them being terminated, William's testimony clarifies this. He "told them that if they refused the test that they would get terminated." (Doc. 29-9 at 38:21-22.) Thus, the Plaintiffs and Ramsey's refusal to take the test acted as their termination.

To establish their claim under *McDonnell Douglas*, Plaintiffs must demonstrate that they and their proffered comparator were "similarly situated in all material respects." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019) (*en banc*). To meet this standard, "[the] plaintiff[s] and [their] comparators must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Id.* at 1228 (quotations omitted). Although "minor differences in job function [will not] disqualify a would-be comparator," *id.* at 1227, "comparators must perform jobs similar to the plaintiff's; thus, the plaintiff must show that, in [their] job, [they] shared the same type of tasks as the comparators." *Cooper v. S. Co.*, 390 F.3d 695, 734–35 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (quotations omitted). The Court is to examine if the proffered comparator and the plaintiffs:

> [E]ngaged in the same basic conduct (or misconduct) as the plaintiff . . . [were] subject to the same employment policy, guideline, or rule as the plaintiff[5] . . . will ordinarily (although not inevitably) have been under the jurisdiction of the same supervisor . . . and will share the plaintiff's employment or disciplinary history.

*Lewis*, 918 F.3d at 1227-28.

---

[5] *Lathem v. Dep't of Children and Youth Services*, 172 F.3d 786, 793 (11th Cir. 1999).

The Plaintiffs offer Brandon Ramsey as a comparator. (Doc. 32 at 15.) On the day of the drug test, Ramsey was the only other employee besides the Plaintiffs who refused the drug test and was terminated. (Doc. 29-1 ¶ 31.) However, Ramsey was allowed to return to work. (*Id*.) According to Ramsey, the day after he was terminated, he visited the main office of the Defendant to meet with one of the owners and was informed he could return to work if he agreed to be subject to random drug screens; however, no formal agreement was signed. (Doc. 29-11 at 36:11-37:2.)

Defendants argue that Ramsey is an improper comparator because of the differences in skill and position. (Doc. 29-1 at 24.) There is no dispute that Ramsey had prior experience running machinery and had been with the company far longer than the Plaintiffs. (Doc. 29-11 at 14:22, 42:16-23, 11:2.) The plaintiffs were described as "laborer-operators" (doc. 29-3 at 39:13-14) and one of the plaintiffs stated that Ramsey was an "operator," and agreed that it was a position that you work your way up to. (Doc. 29-3 at 38:3-39:21.) Ramsey stated his work tasks included operating heavy machinery including excavators, bulldozers, compactors, dump trucks, and rock trucks (doc. 29-11 at 41:7-8), while Plaintiffs stated their typical workday included shoveling mud out of holes, cleaning up buildings, tearing

down buildings, leveling ground, and other manual labor as needed. (Doc. 29-3 at 37:4-7.)

The conduct here, or rather misconduct, was the same for Plaintiffs and Ramsey because they were terminated for the same reason. Additionally, there is no indication that they were subject to different employment policies. Plaintiffs and Ramsey also had the same supervisor, Willie Williams. (Doc. 29-11 at 22:15; Doc. 29-1 ¶ 6.) Although these facts support that Ramsey is a valid comparator, the ultimate inquiry here is whether Ramsey and Plaintiffs are "similarly situated in all material aspects." *See Vinson v. Tedders*, 844 Fed. Appx.[6] 211, 213–14 (11th Cir. 2021) ("Because Brown and Bass had different work experience, different job duties, and different job titles, they were not 'similarly situated in all material respects.'") (quoting *Lewis*, 918 F.3d at 1226).

This Court finds that they are not. Although Ramsey and the Plaintiffs were subjected to the same policies and had the same supervisor, Ramsey had more construction experience (doc. 29-11 at 14:22, 42:16-23, 11:2), worked for the Defendants for years prior to Plaintiffs getting hired (*id.*), performed different tasks (docs. 29-11 at 41:7-8; 29-3 at 37:4-7), and had a different title (docs. 29-3 at 39:13-

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." U.S. Ct. of App. 11th Cir. Rule 36-2.

14, 38:3-39:21). Therefore, this Court cannot say Ramsey is an appropriate comparator. Because Plaintiff's proffered comparator is not "similarly situated in all material respects," Plaintiff has failed to establish a prima facie case of discrimination under *McDonnell Douglas*. *Lewis*, 918 F.3d at 1226.

### ii. Convincing Mosaic of Circumstantial Evidence

Meeting their burden under the *McDonnell Douglas* framework is not the only way for Plaintiffs to survive summary judgment. *See Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Plaintiffs may also survive summary judgment if they present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* A convincing mosaic may be shown by evidence of (1) suspicious timing; (2) ambiguous statements; (3) systematically better treatment of similarly situated employees; (4) that the employer's justification is pretextual; and (5) "other bits and pieces from which an inference of discriminatory intent might be drawn." *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019).

The Plaintiffs do not present "a mosaic of circumstantial evidence" capable of allowing a reasonable jury to infer that the Defendants acted with discriminatory intent. There are no allegations of suspicious timing. Plaintiffs only offer one instance of "ambiguous statements" that might support an inference of racial

animus, but certainly not enough to rise to discriminatory intent. As discussed above, Plaintiffs have failed to show that any similarly situated employee received better treatment than them. Further, Ramsey getting rehired certainly does not show "systematically better treatment." Plaintiffs also fail to show that Defendant's justification is pretextual.

Thus, at best, the Plaintiffs mosaic consists solely of "bits and pieces." The Plaintiffs "bits and pieces" are as follows: (1) on the day of the drug tests, even though plaintiffs and Ramsey worked the same amount of time, Ramsey was paid for a full day of work and the Plaintiffs were only paid for a half day (docs. 29-11 at 39:14-40:3; 33-11 at ¶ 9; 33-2 ¶ 9), (2) despite relying on the importance of a drug free work environment and that being a condition of Ramsey's rehiring, he was not drug tested for several months upon his return, (doc. 29-11 at 37:19-38:8), (3) construing factual inferences in a light most favorable to the Plaintiffs, Toxey's alleged refusal to call the Plaintiffs by their name, only referring to the Plaintiffs as "y'all" and "boys" while calling all of the white employees by their name (docs. 29-3 at 44:21-46:10; 29-6 at 35:17-36:4) and the difference in job assignments given to the Plaintiffs in comparison to their white co-workers (docs. 29-6 at 35:8-16; 29-3 at 51:21-52-9), and (4) the refusal to allow the Plaintiffs to receive training in

operating machinery[7] (doc. 29-1 ¶¶ 14-15). However, the essential question in this case was whether or not the Defendants acted in a discriminatory manner in choosing not to rehire the Plaintiffs. Everyone at the job site was drug tested because there was a report that the Plaintiffs were seen smoking marijuana on the job. (Docs. 29-9 at 35:7-18; 29-1 ¶ 24.) Thus, although another employee also refused the drug test, the Defendants had a good faith basis for believing the Plaintiffs were smoking *while on the job*. This fact in conjunction with the lack of construction experience and history with the company is enough to show despite some "bits and pieces" of possible discrimination, the Defendants had non-pretextual reasoning for not rehiring the Plaintiffs.

Accordingly, Defendant's motion for summary judgment as to race discrimination is **GRANTED.**

**B. Defendants are entitled to summary judgment on their retaliation claim because there is no genuine dispute of material fact.**

Title VII's antiretaliation provision forbids an employer from "discriminating against" an employee because the employee "has opposed" unlawful employment practices or "has made a charge, testified, assisted, or participated in" a Title VII

---

[7] The Court does consider the fact that Plaintiff Hall caused an accident the one time that Ramsey was trying to teach him to drive a tractor. (Doc. 29-3 at 43:14-19.)  However, Hughes alleges that he asked on several occasions to receive training and was told no. (Doc. 29-7 at 58:2-11.)

hearing, proceeding, or investigation. 42 U.S.C. § 2000e-3(a); *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020). "Retaliation claims are also cognizable under 42 U.S.C. § 1981 and are analyzed under the same framework as Title VII claims." *Gogel*, 967 F.3d at 1134.

Under *McDonnell Douglas*, the Plaintiffs bear the burden of establishing a prima facie case. In the retaliation context, the Plaintiffs must show (1) they engaged in statutorily protected conduct, (2) they suffered an adverse employment action, and (3) that "there is some causal relation" between the protected conduct and the adverse action. *Alvarez v. Royal Atl. Develops., Inc.*, 610 F.3d 1253, 1268 (11th Cir. 2010) (citing *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008)). If the Plaintiffs make a prima facie case, the burden then shifts to the Defendants to proffer a "legitimate, non-retaliatory reason for the challenged employment action." *Pennington*, 261 F.3d at 1266 (first citing *Olmsted*, 141 F.3d at 1460; and then citing *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)). If the Defendants make this showing, the burden shifts back to the Plaintiffs to show, by a preponderance of evidence, that the employer's reason for taking the action "is a pretext for prohibited, retaliatory conduct." *Pennington*, 261 F.3d at 1266 (citing *Olmsted*, 141 F.3d at 1460). "The inquiry into pretext requires the court to determine, in view of all the evidence, 'whether the plaintiff[s] ha[ve] cast sufficient

doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.'" *Crawford*, 529 F.3d at 976 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and quotations omitted)).

Plaintiffs believe they were illegally retaliated against when they were terminated and not allowed to return to work shortly after they had complained to their supervisor that they felt they were being treated in a racist manner. (Doc. 1 ¶ 57.) The Defendants appear to contest that this case has "statutorily protected activity" because "the Plaintiffs fail to produce any evidence of any 'racist' behavior, nor did they elaborate to Mr. Williams about the behavior of Mr. Toxey that they deemed to be racist." (Doc. 29-1 at 22.) For the purposes of this opinion, this Court will assume that the Plaintiffs' complaint to Williams was "statutorily protected activity."

### i. Causal Relationship

The Defendants argue that there is no causal relationship between the protected activity and the adverse employment action. (Doc. 29-3 at 22.)

"A 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for

purposes of a prima facie case." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (citing *Olmsted v. Taco Bell Corp*, 141 F.3d 1457, 1460 (11th Cir. 1998)). We construe the causal link element broadly so that "a plaintiff merely has to prove that the protected activity and the ... [adverse] action are not completely unrelated." *Olmsted,* 141 F.3d at 1460. Even a one-month period between the protected expression and the adverse action can give rise to an inference of causation. *See Higdon*, 393 F.3d at 1220 (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998)). Here, the Plaintiffs first raised concerns of racial mistreatment in late January (doc. 29-9 at 32:23) and were alleged to have been spotted smoking marijuana on the job site and terminated on February 19, 2021. (Doc. 29-1 ¶ 24.)

However, in certain circumstances, the causal chain is broken.[8] This Court finds that the report of the Plaintiffs spotted smoking marijuana on the job and their refusal to take a drug test broke the causal chain. This spotting and refusal to test gave the Defendants a valid reason, unrelated to the "statutorily protected

---

[8] *See Hankins v. AirTran Airways, Inc.*, 237 F. App'x 513, 521 (11th Cir. 2007) (holding an act of misconduct by the Plaintiff broke the causal chain) and *Henderson v. FedEx Express*, 442 F. App'x 502, 504 (11th Cir. 2011) (holding falsification of a time card broke the causal chain). Although unreported, this Court finds the reasoning in these cases persuasive. U.S. Ct. of App. 11th Cir. Rule 36-2.

activity," to terminate the Plaintiffs. As mentioned above in the analysis of their race discrimination claim, because the Plaintiffs were the ones that were reported as smoking marijuana on the job, and in conjunction with their lack of construction experience and history with the company, it was reasonable for Defendants to terminate and not rehire Plaintiffs and that is wholly unrelated to their report to Williams. Thus, Plaintiffs have failed to put forth a prima facie case of retaliation.

### ii. Burden Shift to Defendant – Non-Retaliatory Reason

Even if Plaintiffs had made out a prima facie case, it is clear that Defendants have provided a legitimate, non-retaliatory reason for the Plaintiffs termination and the decision to not rehire them. Defendants allege that the Plaintiffs were terminated for failing to take a drug test. (Doc. 29-1 ¶ 29.) Defendants provide several reasons for this decision, and the Plaintiffs even agree with the main proposition: a drug free workplace is important for safety, especially in construction work. (Docs. 29-3 at 62:11-17; 29-6 at 47:17-49:15.) Additionally, the Defendants cited limited experience and limited set of skills for their basis of not hiring the Plaintiffs back, compared to the "extensive experience" of Ramsey. (Doc. 29-1 at 24.) Consequently, the burden then shifted back to the Plaintiffs to prove that the offered non-retaliatory reason was pretextual.

### iii. Burden Shift – Pretext

Plaintiffs "may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason' as long as 'the reason is one that might motivate a reasonable employer.'" *Pennington*, 261 F.3d at 1267 (quoting *Combs*, 106 F.3d at 1543). The refusal to take a drug test, in conjunction with their lack of time with the company and lack of experience is reasonable grounds to terminate and not rehire Plaintiffs. For "federal courts do not sit to second-guess the business judgment of employers." *Combs*, 106 F.3d at 1543. The Court will not disturb the business judgment here of Defendants not rehiring Plaintiffs as Plaintiffs have failed to show that this reasoning was pretextual.

### iv.  Convincing Mosaic of Circumstantial Evidence

The "convincing mosaic of circumstantial evidence" analysis can be applied to retaliation cases.[9] *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310 (11th Cir. 2023) ("An Employee May Rely on a Convincing Mosaic of Circumstantial Evidence to Prove Retaliation"). "When an employee relies on circumstantial evidence of retaliation in opposition to summary judgment, she must present

---

[9] Plaintiffs and Defendants stated that no published Eleventh Circuit opinion had confirmed the use of the "convincing mosaic" analysis in retaliation cases. (Docs. 32 at 28; 36 at 6.) That statement is incorrect.

enough circumstantial evidence to create a genuine issue of material fact about the employer's retaliatory intent." *Id.*

Plaintiff does not present "a mosaic of circumstantial evidence" capable of allowing a reasonable jury to infer that Defendant illegally retaliated. Thus, at best, Plaintiff's mosaic consists solely of "bits and pieces." The bits and pieces of the mosaic for retaliation are the same as detailed above for race discrimination. Thus, the Plaintiffs have failed to put forth enough evidence to show that their termination and failure to be rehired was related in any way to illegal retaliation for their complaint to Williams.

## IV. Conclusion

For the reasons described above, Defendant's Motion for Summary Judgment is due to be **GRANTED**. An Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on February 2, 2024.

_____
L. Scott Coogler
United States District Judge

215708